*In re* APPORTIONMENT OF STATE LEGISLATURE—1982. (Docket No. 68777.) On order of the Court, the petition for submission of proposed apportionment plans for the Michigan Legislature and the response thereto are considered. Mich Const 1963, art 4, § 6 provides for consideration by this Court a "proposed plan" submitted by a "member of the commission, individually or jointly with other members" "if a majority of the commission cannot agree on a plan". No "proposed plan" has been submitted nor have we received official notice from the commission that a majority of the commission cannot agree on a plan. Accordingly, the relief prayed for in the petition and in the response thereto is denied.

LEVIN, J., dissents and states as follows:

The Republican members of the Commission on Legislative Apportionment filed a petition with this Court on January 29, 1982, stating that "to date the commission has been unable to agree upon a plan" for the reapportionment of the Legislature, that "in the opinion of your petitioners" the "commission is deadlocked in its deliberations and there remains no reasonable likelihood that the commission will be able to resolve its differences and adopt the necessary redistricting plans", that "more than 180 days has elapsed since all of the necessary census information was made available to the commission", and that "it is necessary for the protection of all parties and for the

orderly administration of justice that this Court issue a preliminary order establishing the procedure to be followed for the submission of plans for review by this Court".

Petitioners asked this Court to "assume jurisdiction of this proceeding under" Const 1963, art 4, § 6, and to issue a "preliminary order" in the form of Exhibit A hereto.

The Democratic members of the Apportionment Commission filed a response with this Court on February 2, 1982 agreeing "that the Court accept jurisdiction in the premises as prayed by petitioners, except that the Court's preliminary order should provide as" set forth in Exhibit B hereto. The response of the Democratic members admits the allegation that to date the commission has been unable to agree but asserts that "because of the intended and executed impasse by petitioners Sanderson, et al. [the Republican members], the opportunity for achieving accommodation was foreclosed". They agree with the allegations that in the opinion of the petitioners the commission is deadlocked and there remains no reasonable likelihood that it will be able to resolve its differences and adopt redistricting plans but assert that this is "for the reason that petitioners Sanderson, et al., have by their actions evidenced an intention not to resolve such differences". They deny that more than 180 days has elapsed, asserting that all necessary census information did not become available, as contemplated by the constitution, until November 20, 1981. They "admit, despite the unclean hands of petitioners, that it is necessary for the protection of all parties and for the orderly administration of justice that this Court issue a preliminary order establishing the procedure to be followed for the submission of plans for review by this Court".

The pertinent provision of the constitution reads as follows:

"If a majority of the commission cannot agree on a plan, each member of the commission, individually or jointly with other members, may submit a proposed plan to the supreme court. The supreme court shall determine which plan complies most accurately with the constitutional requirements and shall direct that it be adopted by the commission and published as provided in this section." Const 1963, art 4, § 6.

The constitution thus requires an impasse, defined as when "a majority of the commission cannot agree on a plan", before any member of the commission may submit a proposed plan to this Court and that one or more plans be submitted before this Court can determine "which plan complies most accurately with the constitutional requirements". The constitution does not prescribe the manner in which there shall be determined whether there is an impasse or

preclude this Court from acting, before receipt of a proposed plan, on a claim that there is an impasse.

In the instant case the claim that there is an impasse is made by four members of the commission. Without the agreement of at least one of them there would be an inability of a majority of the commission to agree on a plan.

The Court's decision in *In re Apportionment of State Legislature— 1972,* 387 Mich 442, 451 (1972), that a proposed plan may be submitted to the Court although it was not submitted to or considered by the commission means that it is likely that the plan representing the "last best offer" of each side will be submitted at the last possible moment so that it cannot be improved upon by the other side. Consequently, any plan that may be submitted to the Court before the last plan submitted by each side is likely to be at least somewhat disingenuous.

For this and perhaps other reasons both sides agree that this Court should establish a timetable for submission of plans. There is no reason to require the *pro forma* submission of a *pro forma* plan which will be replaced by the real plan. Both sides are understandably reluctant to put forth a disingenuous plan. The constitution does not require the performance of a meaningless act.

For the foregoing reason, I do not think that the absence of a proposed plan is a substantial basis for declining to consider the petition. The absence of a plan does not affect this Court's "jurisdiction" unless it so declares. It is unwise for the Court to so declare if for no other reason than that neither side may be willing to offer a *pro forma* plan and as the days, weeks and months go by it may become clear that there is an impasse and that it is essential for the Court to establish a timetable for the submission of proposed plans in order to obtain the filing of any plan. Also, circumstances may develop following some future census such that it becomes manifest that the Court should act on its own initiative. We should not preclude a future court from so acting by today adopting a limiting construction making the Court's "jurisdiction" dependent on the filing of a proposed plan.

I appreciate that the language of the petition and of the response can be read as not precluding the possibility of the two sides yet achieving agreement, and that one side asserts that the 180-day period has not expired. One side or another may be attempting to involve the Court as a screen for negotiations that are continuing. I would make no such assumption and would accept the petition and response at face value.

If the Court were to assume "jurisdiction" it would not be reaching out to involve itself in this matter. Both sides have asked the Court to

assume jurisdiction. The Court should not, on insubstantial grounds, avoid its responsibility to address the question so duly presented to it.

I would issue an order directing both sides to appear at the earliest possible date to state their views on the unresolved issues so that the Court can determine what would be an appropriate disposition of the petition.

The foregoing views should not be understood as an expression of opinion on the continuing viability of Const 1963, art 4, § 6. See *In re Apportionment of State Legislature—1964,* 373 Mich 243, 258 (1964) (SOURIS, J.) and *In re Apportionment of State Legislature—1972,* 387 Mich 442, 492 (1972) (T. G. KAVANAGH, J.).

EXHIBIT A

PROPOSED PRELIMINARY ORDER
SUBMITTED BY REPUBLICAN MEMBERS
OF COMMISSION

1. That any commissioner or commissioners wishing to present a plan to this Court for its consideration must present such plan in an electronic format readable by Secretary Austin and must submit such plan to the other members of the commission, and to Secretary Austin, for audit, on or before a date to be determined by the Court.

2. That the Court accept only plans that have been submitted in accordance with paragraph 1, above. In addition, any plan submitted to the Court shall be in written form and shall be accompanied by a copy of Secretary Austin's audit report. Written form shall mean that each plan must consist of:

a. A statewide map showing the proposed election districts;

b. A list of the census geography contained within each proposed district;

c. A statement of population count for each proposed district;

d. An analysis of minority population (as reported by the Bureau of Census, U. S. Department of Commerce) for each proposed district;

e. An analysis of the number of counties and minor civil divisions (hereinafter "MCD") (as defined by the Bureau of Census, U. S. Department of Commerce) which fall into more than one proposed district, and for each such county and/or MCD, the number of districts into which it falls;

f. A statement that all proposed districts are contiguous. Secretary Austin's audit report shall verify and confirm all of the above.

3. That the presenter or presenters of any such plan shall have not less than three days to correct any errors discovered by Secretary Austin in his audit.

4. That the Court establish a date certain by which all plans must be audited and submitted to the Court.

5. That the Court provide a reasonable time of not less than two weeks during which any commissioner may file briefs in support of or opposition to the various plans which have been submitted.

6. That the Court provide for oral argument in support of or opposition to the various plans that have been submitted.

7. That the Court provide for such other preliminary matters which it may deem necessary or proper in the circumstances.

EXHIBIT B

PROPOSED PRELIMINARY ORDER
SUBMITTED BY DEMOCRATIC MEMBERS
OF COMMISSION

1. Any commissioner, individually or jointly with other commissioners, may submit a proposed plan ("plan") to this Court for its consideration after the plan has been audited by the Secretary of State, as provided below. The plan(s) shall be delivered to the Secretary of State for such audit within two weeks from the date of this order.

2. Any plan shall be delivered to the Secretary of State in an electronic format readable by electronic facilities available to him. It shall also be delivered in written form.

3. "Written form" shall mean that each plan shall consist of:

a. A statewide map showing the proposed election districts;

b. Maps of individual counties, cities and townships which have been divided by the proposed districts. These divisions shall be shown on the maps of such political subdivisions which were prepared by the Secretary of State for use by the commission;

c. A list of the census geography contained within each proposed district;

d. A statement of the population count for each proposed district;

e. A statement of the minority population (as reported by the Bureau of Census, U. S. Department of Commerce) for each proposed district (provided that this requirement for the production of such data shall be without prejudice to all claims and defenses with respect to the use thereof);

f. An analysis of the number of counties, cities and townships which have district lines crossing their boundaries;

g. A statement that all proposed districts are contiguous.

4. The Secretary of State's audit shall verify and confirm the provisions of ¶ 2 and 3, above.

5. The Secretary of State shall notify each commissioner presenting a plan of the results of the Secretary's audit of that plan and shall notify all commissioners of the date on which all audits have been completed and all commissioners were notified of the audits of their plans. Each commissioner may submit the plan to the Court with concurrent service on all other commissioners in the same electronic format and written form, on a common date certain, to be prescribed by the Court, no later than three days after receipt of the notice from the Secretary of State that all audits have been completed and all commissioners notified. Each plan submitted to the Court and to the other commissioners shall be accompanied by a brief in support thereof.

6. Any commissioner wishing to reply to another commissioner's brief shall file such reply with the Court and serve copies on all other commissioners within two weeks after receipt of plans and briefs.

7. Oral argument in support of or in opposition to submitted plans shall be had on a date not less than one week after the due date for the submission of replies to briefs.

8. The Court may provide for such other preliminary matters which it may deem necessary or proper in the circumstances.